IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LIFESTYLES UNLIMITED, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| STEPHEN DAVIS, CHARLY | ) | |
| VARGHESE, REAL WEALTH | ) | |
| ACADEMY LLC, | ) | |

Defendants.

## PLAINTIFF LIFESTYLES' UNLIMITED, INC.'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Lifestyles Unlimited, Inc. ("LUI"), for its complaint against Defendants

Stephen Davis, Charly Varghese, and Real Wealth Academy, LLC (collectively,

"Defendants"), hereby alleges as follows:

## PARTIES

1.      LUI is a Texas corporation with its principal place of business located in

Harris County, Texas.

2.      Defendant Stephen Davis ("Davis") is a resident of Harris County, Texas

and may be served with process at 20426 Apache Lake Dr., Katy, TX 77449.

3.      Defendant Charly Varghese ("Varghese") is a resident of Fort Bend County,

Texas and may be served with process at 4522 Montcliff Bend Lane, Sugar Land, Texas

77479.

4.      Defendant Real Wealth Academy, LLC ("RWA") is a Texas limited liability company doing business in Harris County, Texas which may be served with process through its registered agent, Stephen Davis, 20426 Apache Lake Dr., Katy, TX 77449.

5.      On information and belief, Davis is the sole member and manager of RWA.

6.      On information and belief, RWA does business as The Realty Investment Community of Houston a/k/a RICH Club ("RICH"), a trade association serving the real estate investment community of the Greater Houston Area.

## JURISDICTION AND VENUE

7.      This action for copyright infringement, trademark infringement, breach of contract, and related causes of action arises under 17 U.S.C. § 501, 15 U.S.C. § 1125, and the common law of the State of Texas.

8.      This Court has original jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1338 for claims arising under the Copyright Act and Lanham Act, and supplemental jurisdiction under 28 U.S.C. § 1367 for related state-law claims.

9.      This Court has personal jurisdiction over Defendants because Defendants are residents of Texas and have committed acts of copyright infringement and trademark infringement in the Southern District of Texas and elsewhere in the United States.

10.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)(1), (2) and (c)(1), (2) because Defendants reside in the Southern District of Texas and a substantial part of the events giving rise to the claims occurred in this judicial district.

## FACTS

### Davis's 27-year Employment with LUI.

11.     Founded in 1990, LUI is the premier education and mentoring group for real estate investors.

12.     For decades, LUI has taught its program to both beginning and advanced investors, including many members who had never owned real estate.

13.     LUI guides its members step-by-step through property locating, evaluating, negotiating, financing, closing, rehabbing, leasing, and managing.

14.     LUI has changed peoples' lives through these efforts and by virtue of its valuable intellectual property.

15.     Del Walmsley is the founder of LUI, as well as the sole officer, sole director, and sole shareholder of LUI.

16.     In 1992, Mr. Walmsley retained Davis as an independent contractor. Sometime later, Davis became a full-time employee of LUI.

17.     Mr. Walmsley mentored Davis, paid Davis millions of dollars over 27 years to be a radio host and salesman, and gave Davis the opportunity to develop into a successful real estate investor himself.

18.     But Davis was never an LUI "Mentor" and did not act as an LUI "Lead Investor$^{TM}$."

**LUI Initiates 2016 State Lawsuit Against Davis, Resulting in 2016 Settlement and Confidentiality Agreements.**

19.     Unfortunately, in 2016, Davis attempted to undermine Mr. Walmsley's work and LUI itself, including by claiming that Davis was a partial owner of LUI, which resulted in a lawsuit styled *Stephen Davis v. Delbert E. Walmsley and Lifestyles Unlimited, Inc.*, Cause No. 2015-68571, in the 270th District Court of Harris County, Texas (the "State Lawsuit").

20.     The State Lawsuit culminated in a Confidential Settlement and Compromise Agreement (the "2016 Settlement Agreement"), dated May 10, 2016, between Davis, Mr. Walmsley, and LUI, which set forth terms for Davis's continued employment with LUI.

21.     In the 2016 Settlement Agreement, Davis "expressly disavow[ed] and with[drew]" any claim that he was a partial owner of LUI and fully acknowledged "he [was] not and never has been an owner . . . of any part of [LUI][.]"  [2016 Settlement Agreement, Section 1(f).]

22.     As a part of that Agreement, Davis also disclaimed any interest or right in LUI's intellectual property.  [*Id.*]

23.     Davis further agreed to keep the 2016 Settlement Agreement confidential and to not "disclose to any person the existence of, or terms and conditions of" that agreement.  [*Id.* at Section 1(h).]

24.     Attached to the 2016 Settlement Agreement as Exhibit A is a Confidentiality Agreement, Non-Solicitation Agreement, Covenant Not to Compete and Invention Assignment (the "2016 Confidentiality Agreement"), dated May 10, 2016.

25.     Therein, Davis agreed not to disclose or use LUI's confidential information—including but not limited to LUI's business models, teaching techniques, sales and other strategies, trade secrets, or knowledge or information of value to LUI ("Confidential Matters")—without LUI's prior approval.  [2016 Confidentiality Agreement, Sections 1, 1(c).]

26.     Davis also assigned, transferred, and conveyed to LUI all right, title, and interest in and to "all materials and information, including educational content, member (customer) files, created, developed, authored, conceived, reduced to practice, made, discovered, and/or delivered by [Davis], solely or in collaboration with others, . . . and all intellectual property rights in and to the foregoing" ("Work Product").  [*Id.* at Section 4.]

27.     Davis further acknowledged that materials he had created or participated in creating during his employment with LUI were the sole and exclusive property of LUI. [*Id.* at Section 1(b).]

**LUI Initiates 2019 Federal Lawsuit, Resulting in 2019 Settlement Agreement.**

28.     Davis's employment with LUI ended on January 15, 2018.

29.     Shortly thereafter, Davis began doing business through RWA, an entity he had formed in November of 2016.

30.     Through RWA, Davis (again) attempted to undermine LUI's work, which resulted in a *second* lawsuit.  *See Lifestyles Unlimited, Inc. v. Stephen Davis*, Case No. 4:18-cv-02233, ECF No. 1 (S.D. Tx. June 26, 2018) (the "Federal Lawsuit").

31.     The Federal Lawsuit culminated in a Confidential Settlement Agreement and Mutual Release the ("2019 Settlement Agreement"), dated July 25, 2019, between Davis and LUI.

32.     In the 2019 Settlement Agreement, Davis agreed, among other things, to not reproduce LUI's Copyrighted Works,[1] prepare or perform any derivative works based on LUI's Copyrighted Works, or promote or offer to sell any reproduction or derivative work of those Copyrighted Works.  [2019 Settlement Agreement, Sections 1(a)(i), (iii) (iv).]

33.     Defendant also agreed to not state or imply that he was an official or unofficial mentor for LUI, that he had mentored all or a substantial part of LUI's members, that he "is currently affiliated with LUI, that LUI sponsors or endorses [his] services, or that [his] services are derived or adapted from LUI's services[.]"  [*Id.* at Section 1(a)(vi), (vii), (vii).]

---

[1]     The "Copyrighted Works" include the copyright registrations issued by the United States Copyright Office regarding the following works: (1) 1990 training manual (Registration No. TXu 2-093-578); (2) Free Workshop Script (Registration No. TXu 2-093-031; the "Script" defined above); (3) 2014 Free Workshop Video (Registration No. PAu 3-907-835); (4) 2008 Free Workshop Video (Registration No. PAu 3-907-896); (5) Part 1 of teaching presenters free workshop (Registration No. PAu 3-907-838); (6) Part 2 of teaching presenters free workshop (Registration No. PAu 3-907-839); (7) Part 3 of teaching presenters free workshop (Registration No. PAu 3-907-840); and (8) 2015 2-Day Seminar Workbook (Registration No. TXu 2-093-082).

34.     And while Davis could state where he worked, Davis agreed to not say so in a manner that would "suggest current affiliation . . . Or . . . suggest [Davis's] ownership or authorship of any materials or information."  [*Id.* at Section 1(b).]

35.     Davis further agreed to not disparage or "speak negatively" about LUI to members of the public, and that, if inquiries were made to Davis, he would "simply state that all matters related the [Federal Lawsuit] were settled amicably[.]"  [*Id.* at Section 1(d).]

36.     Additionally, the parties agreed, by signing the 2019 Settlement Agreement, to enter into a stipulated permanent injunction and to dismiss the 2019 Lawsuit.  [*Id.* at Section 2.]

37.     On July 29, 2019, the Court entered the agreed upon permanent injunction and dismissed the action with prejudice.  *See Lifestyles Unlimited, Inc. v. Stephen Davis*, Case No. 4:18-cv-02233, ECF No. 56 (S.D. Tx. June 26, 2018).

### Davis Again Infringes LUI's Intellectual Property Rights.

38.     On January 15, 2020, Davis's covenant not to complete, as set forth in the 2016 Confidentiality Agreement, expired.

39.     Since that time, Davis has breached his agreements with LUI and (again) set forth on a deliberate course of infringing LUI's intellectual property rights through his entity, RWA, and otherwise.

40.     For example, on January 18, 2020, RICH hosted an event titled "The Return of Steve Davis!" at 1322 Space Park Dr., Houston, Texas 77058.

41.     At that event, Davis represented that he had "helped literally tens of thousands, if not hundreds of thousands, of people through [his] one-on-one mentoring and . . . radio show."

42.     With this statement, Davis was referring to people *LUI* helped while Davis worked with LUI, it did not refer to Davis's personal experience helping "hundreds of thousands" of people.

43.     Davis's covenant not to complete had only expired three days prior, meaning that he could not be referring to his work with RWA.  Rather, Davis was falsely suggesting that he had been a mentor with LUI, in violation of the 2019 Settlement Agreement.  And Davis was further implying an affiliation between himself and LUI, again in violation of the 2019 Settlement Agreement, as the radio show that he was referring to was, in fact, the Lifestyles Unlimited Real Estate Investor Radio Show.  Thus, it is LUI—not Davis—who has helped thousands of people through mentoring and its radio show.

44.     At the January 2020 Presentation, Davis also stated that he and Mr. Walmsley had started LUI, and that, at that time, LUI "helped everybody."  Davis then went on to state that LUI now only "help[s] people that already have money[,]" but that RWA "is going back to what [LUI] was" because RWA is "going to help everybody."

45.     Through these statements Davis was again implying an affiliation between himself and LUI, as well as disparaging LUI and suggesting that he had been a part owner of LUI, all in violation of the 2016 and 2019 Settlement Agreements.

46.     Davis also stated at the January 2020 Presentation that "[t]he material [taught] at [RWA] has resulted in the purchase of tens of thousands of single family homes across the United States and over three billion dollars worth of commercial, of apartment complex, purchases."

47.     With these statements, Davis was referring LUI's success while Davis worked with LUI.

48.     Again, Davis's noncompete had only ended three days prior to this statement, and his work through RWA over three days could not have resulted in the purchase of tens of thousands of single-family homes or three billion dollars' worth purchases in that short period of time.  Rather, Davis was referring to LUI's materials which he and RWA were improperly using in violation of Copyright Law and the 2019 Settlement Agreement.

49.     Davis then proceeded, without the authorization or consent of LUI, to perform and/or display in whole or in part constituent elements of LUI's Copyrighted Works at the January 2020 Presentation, thereby infringing LUI's copyrights and further breaching the 2019 Settlement Agreement.

50.     For example, at the January 2020 Presentation, Davis stated that (emphasis added; coloring added for comparison):

> **According to the US government, by age 65, 95% of Americans fail to retire independently. 36% are dead.** If you didn't realize that getting old sucks, it does. I'm 55 now and never thought I'd be 55. I swear to you, when I was 27, 28, 55 seemed like so far away that it would never happen. It happened. It's come, and I hope, this sounds weird, 85's coming. I hope I live that long.

51.     One of LUI's Copyrighted Works contains the following language (emphasis added; coloring added for comparison):

> Why is this so important?  **Because in 1970, 1980, 1990 and 2000 and 2010, the census found that 95% of Americans fail to retire by age 65.  In fact[,] 36 percent are dead by age 65.**

52.     At the January 2020 Presentation, Davis also stated:

> **Um, okay, when it comes to money, you have to understand there is no right or wrong. There's only effective or ineffective. Simply put, either what you've done to build wealth for yourself and your family has worked or it hasn't. You're either in the financial position you want to be in or you're not.** And when you start, see how the ego is dissipating? It doesn't feel as bad to say "Yeah, it didn't work. I need to change what I'm doing," compared to saying "Man, I was wrong." It's a different feel. It's a different way to control that ego.
>
> **Not right or wrong, effective or ineffective.**
>
> **Another ego-based word that comes into play is the word failure. This is a- success and failure are very ego-based words.** And the reason they are is because they're all- they're so many different definitions of it. Everybody has a different definition of success. Everybody has a different definition of failure. **Like I subscribe to the concepts of Stephen Covey and Anthony Robbins that there's really no such thing as failure. To keep the ego out of it, it's only results. There is no failure. There are only results. When you get a result you don't want, you change what you're doing. Failure would be to go ten years working at a job, not being in a financial position you want to be in, and go "I think I'll work ten more years and see what happens." It didn't work the first ten years, but for some reason it's going to work the next ten years? Doesn't make any sense.** That is a form of failure, but you can nip that in the bud, stop it, by taking action on that second stream of income.

4840-6655-4039

Um, by age 45, let's say you've worked 22 or more years. And as a rule, if you're working 40, 50, 60 hours a week for 20, 22 years, don't you think you should be financially independent by then? Not many people do. They've been conditioned not to.

The truth is, if you were to work real estate investing 40 hours a week, how many of you do you think after 22 years you'd be independent? Absolutely.

See, 22 years is a huge amount of time. Five years is a huge amount of time. But when we talk about jobs, we're conditioned to work 45 years before we can retire, and then 95% of people can't do it. See, in that particular case, where somebody's worked for 22 years, they're 44, and they're still not financially independent. You might say to yourself on the failure, don't do that. It is simply a result. It's a result of your behaviors in the past, and if you change your behaviors, modify them, you will get a new result in the next five years or ten years.

53.     One of LUI's Copyrighted Works contains the following language

(emphasis added; coloring added for comparison):

Now, I want to take a moment, because some of you in the room are going: Come on, Steve, five years is not that long. I've worked 10, 15, 20 years for companies.

That is not -- I want to suggest the exact opposite. Five years is a tremendously long time. If you -- our participation in World War II was under five years and look what was accomplished. The entire world economy -- look what's happened in just two weeks, the last two weeks.

Sometimes the entire world economy changes once or twice in a five-year period, but we have been conditioned to believe that we should go out and work 40, 50, 60 hours a week for five years straight, and after all that effort, we can't produce enough passive income to meet and exceed all our bills. We suggest the exact opposite.

If you have done anything for 40, 50, 60 hours a week for five years straight and it has not produced enough passive income to meet and exceed your bills, then what you are

**doing is ineffective, and you should change or modify what you are doing.**

. . .

**And what it did -- I use the word "failure." When all this occurred, I used the word "failure," if you will, evaluating what was going on in my life. Fortunately though, I was reading a book by a man named Anthony Robbins. Some of you have seen this guy on late-night TV, real tall, always smiling, really high energy guy. He sells an excellent set of 30 CDs. But I was reading his book called Unlimited Power, and he says, first off, you have got to be very, very careful when using the word "success" or "failure," because success or failure can be very ego-based words. What he means by that is this. Your ego does not care if you get out of life what you want. Your ego simply wants to appear to other people as if you have gotten out of life what you want.**

. . .

**I will touch more on that with Stephen Covey's work in a moment. What Robbins says is that if you want to keep your ego in check, especially when you are in pain, don't use the word "success" or "failure." Simply look at your life as a result. Either you are getting the results from your life that you want or you are not.**

**You saw me. Instead of working 40 hours a week, I thought I'd work 60 hours a week. I will outwork you all. Other people will do other things. And they will -- they will maybe switch corporations, try to get a new result, and they are hoping that even though it was probably going to be trial and error, that at least the graph is going up.**

. . .

I also found Lifestyles Unlimited, obviously. And what I want to do now is share with you the seven principles that my mentors taught me as they were trying to get me out of the employee's mentality and into what they were calling the millionaire's mentality.

The first and most important thing is making sure that I had the right map. **Now, I am going to take a moment to deal with the word "right," because like "success" or "failure," the word "right" can also be a very, very ego-based word.**

…

**Well, first off, if you want to study this more, I gave you Anthony Robbins. You can find some tools for him -- from him on dealing with the ego. Stephen Covey's work, The 7**

4840-6655-4039

*Habits of Highly Effective People -- but he describes it this way, the same way Robbins does.*
. . .

*He says if you want to keep your ego in check, don't use the word "right" or "wrong," because in life, and especially in money, there is no right or wrong. There is simply effective or ineffective. Simply put, either what you have done to build wealth for yourself and your family has worked or it hasn't.*

54.     Davis's performance and/or display at the January 2020 Presentation is at least a derivative work of, if not a direct infringement of, LUI's Copyrighted Works.

55.     Davis's January 2020 Presentation included information that Davis regularly presented on behalf of LUI when Davis was working with LUI.

56.     Davis's January 2020 Presentation included teaching techniques, sales and other strategies, or knowledge or information that Davis utilized or taught when Davis was working with LUI.

57.     Davis's January 2020 Presentation included information that Davis delivered when Davis was working with LUI.

58.     Davis also gave a presentation on February 8, 2020, at the Embassy Suites by Hilton Houston West ("February 2020 Presentation").

59.     During the February 2020 Presentation, Davis again made claims about being a mentor with LUI, insinuated that he had an ownership interest in LUI, referred to LUI's successes to claim that his information is valuable, commented on the 2016 Settlement and Confidentiality Agreements, and disparaged Mr. Walmsley.

60.     For example, Davis claimed that he had "been a full-time real estate investor for about the last 30 years, but [was] more proud of being a mentor for just about

the same degree of time."  Davis further stated that he had "hopefully helped several hundred thousand people with the [LUI] radio show and one-on-one mentoring for the last 27 years."

61.     Again, Davis had never been a mentor at LUI and his statement that he had been was a violation of the 2019 Settlement Agreement.  Further, Davis was again improperly suggesting his affiliation with LUI by discussing the Lifestyles Unlimited Real Estate Investor Radio Show and suggesting that he had been a mentor with LUI.

62.     Additionally, in the handout distributed by Defendants at the February 8 Presentation, Davis claimed that he had "[m]entored over 100,000 people through **his** daily radio show and one on one mentoring; **his** students have bought an estimated $3 billion worth of real estate" (emphasis added).

63.     Again, Davis's business had only been operating for weeks at this point and could not have resulted in the purchase of $3 billion dollars of real estate.  Rather, Davis was referring to LUI's mentoring, LUI's radio show, and LUI's students' purchases.

64.     Davis also claimed at the February 2020 Presentation that "the information that **we** teach has resulted in the purchase of tens of thousands of single-family homes and billions of dollars worth of commercial property over the last 30 years that I've been doing this."  (emphasis added).

65.     Again, Davis was referring to the information taught by LUI—not Defendants.

66.     Further, Davis stated that he "was off for the last two years.  Kind of forced to be because of my non-compete.  Hated it.  Six months into it, guess what I was doing. Filming classes for when the, um, non-compete ended."

67.     The "non-compete" Davis was referring to was the 2016 Confidentiality Agreement, which Davis was not permitted to discuss.  These statements were a violation of that Agreement.

68.     And Davis also commented at the February 2020 Presentation that Mr. Walmsley was "losing his mind."

69.     This statement by Davis violated the 2019 Settlement Agreement and is patently false.

70.     Davis then proceeded, without the authorization or consent of LUI, to again perform and/or display in whole or in part constituent elements of LUI's Copyrighted Works at the February 2020 Presentation, thereby infringing LUI's copyrights and further breaching the 2019 Settlement Agreement.

71.     For example, at the February 2020 Presentation, Davis stated that (emphasis added; coloring added for comparison):

> **According to the U.S. government, by age 65, 95, 95% of Americans fail to retire independently. They rely on government or payee support. 36% of that 95% are dead by age 65. Golden Years are golden [lie] in America.**

72.     In addition to the excerpt from one of LUI's Copyrighted Works cited above, another of LUI's Copyrighted works contains the following language (emphasis added; coloring added for comparison):

4840-6655-4039

Now, why is this so important. **The reason it's so important is because 95 percent of Americans fail to retire by age 65. Only 5 percent of Americans retire before or at age 65. By the way, 36 percent of that 95 percent are dead by age 65. There's your golden years. The golden years are a golden lie.**

73.     At the February 2020 Presentation, Davis further stated:

. . . You have the biggest ego in the room. That's a problem, um, the truth is, you want an ego, but you have to control it. Your ego is one of your main motivators. It's what gets you up in the morning and gets you to achieve certain things. **The problem is, your ego does not care if you get out of life what you want, that, your ego wants to appear to other people as if you've gotten out of life what you want.** **This is why I meet people literally on a weekly basis with $10,000 watches, $50-$80,000 cars, $500,000 houses, but if they lost their job tomorrow, they couldn't pay the rent on that anymore. They'd lose it all. They traded financial success for the appearance of financial success. Be careful.**

**To get the most out of this workshop and to keep the ego in check, we will try and not to use certain words. Words like right and wrong. They are very ego-based words. I've literally been in arguments with my wife where two or three sentences into the argument I realize I'm incorrect, but what do I do?**

**Because why? The ego has taken over. I wanna be right. What we're gonna use is effective or ineffective because when it comes to money, there is no right or wrong. There's simply effective or ineffective. Either what you've done to build wealth for yourself and your family has worked, or it hasn't. You're either in the financial position you want to be in or you're not. It's that simple.**

**We're also not gonna use the word failure.** Failure is the word that I used when I was in corporate America. **I was working 60-70 hours a week. I placed first place in a national sales contest. They sent me to Hawaii for a week as a reward. When I got back, they rewarded me again with a $20,000 pay cut, and what it did was it woke me up to what corporate America is and being dependent on a job is. And I remember putting my head in my hands going, "Nothing about this is ever gonna get me to the financial position I want to be in." What's a 27-year-old kid do with $70,000? Spends 90, pays off credit cards.**

Um, so when they cut my pay, guess what happened to my credit. Guess what happened to my savings. All gone. **And I considered myself a failure, but fortunately I was reading a book by a man named Anthony Robbins called**

> Unlimited Power. And in it, he says, "Be very careful when using the word failure because it's an ego-based word like right or wrong." How do you define failure? He said, "Simply look at your life as results. There are, is no failure. Only results. If you get a result from your life that you don't want, then change your behaviors. Change what you do."

74.    In addition to the excerpt from one of LUI's Copyrighted Works cited above, another of LUI's Copyrighted works contains the following language (emphasis added; coloring added for comparison):

> But what happen[ed] to me, by the end of my 5th year in the corporate arena, I was working 60 hours a week, I placed 1st place in a national sales contest and I won a trip to Hawaii.  When I got back from Hawaii, they cut my pay by $20,000 per year.  And what this did, was it made me re-evaluate what I thought was important in life, it made me re-evaluate the concept that if I work for a long time for the company that will make me valuable. As you can see from the paycheck it didn't.
> . . .
>
> But even more damaging to me psychologically then these two was this one. I thought, man, if I'm effective at what they hired me to do.  In other words, if I can beat everyone else in the county, at my job, then that will make me valuable.  And, as you can see from the pay cut, it didn't.  And, at this time, I was 27; and, what's a 27 year old kid do with 70,000.00 a year.  He spends $90,000.  It's a thing called credit cards, so when this pay cut came I ended up with bad credit and no money.

75.    Davis's February 2020 Presentation is at least a derivative work of, if not a direct infringement of, LUI's Copyrighted Works.

76.    Davis's February 2020 Presentation included information that Davis regularly presented on behalf of LUI when Davis was working with LUI.

77.    Davis's February 2020 Presentation included teaching techniques, sales and other strategies, or knowledge or information that Davis utilized or taught when Davis was working with LUI.

78.     Davis's February 2020 Presentation included information that Davis delivered when Davis was working with LUI.

79.     Davis has further acknowledged that he could not have independently developed the materials he is using through RWA within the short time period since his employment with LUI ended.  In a podcast titled, "Ep. 1 – Welcome to Get Real Wealth Dot Com Podcast," Davis stated that: "It can take, even including the Internet, you combine the library and the Internet, and it could take you five years.  It could take you 10 years to glean off all these ideas and get to the right ones. . . ."

80.     Davis's website, getrealwealth.com, also advertises and offers Davis's courses to the public.  Upon information and belief, those courses constitute the performance and/or display of LUI's Copyrighted Works or derivative works thereof.

81.     Davis is also advertising his and RWA's services through radio shows and podcasts.  Upon information and belief, these podcasts and radio shows constitute the performance and/or display of LUI's Copyrighted Works or derivative works thereof.

82.     Further, Davis has given speeches alongside Ray Hunt and Keller Williams, during which he promoted himself as "50% Owner and VP Lifestyles Unlimited, Inc."

83.     These statements are violations of the 2016 Settlement Agreement and are intended to create a false affiliation between Defendants and LUI.

**Varghese Assists Davis and RWA in Their Tortious Conduct and Breaches His Agreement With LUI.**

84.     Defendant Varghese is also a former employee of LUI.

85.     For approximately 14 years, Varghese worked as a salesperson for LUI,

-18-

before being terminated in late 2015.

86.     During his employment with LUI, Varghese had access to LUI's Copyrighted Works.

87.     At the time of his termination, Varghese made claims that he was a co-owner of LUI, similar to those claims made by Davis.

88.     On December 23, 2015, LUI and Varghese entered into the Confidential Settlement and Compromise Agreement dated December 23, 2015 ("2015 Varghese Settlement Agreement").

89.     As a part of the 2015 Varghese Settlement Agreement, Varghese acknowledged that he had no ownership in LUI.  Varghese also affirmed that he "has not now and never has been an owner of [LUI]," and he agreed not to make "any affirmative claim thereto, nor shall he make any representation on any resume . . . social media site, personal page or other medium that he was, is or has any right to be an owner, or partner, of [LUI]."  [Section 2(c).]

90.     And Varghese agreed not to make "any disparaging statements, whatsoever, to another person, organization, media representative, competitor, or other entity of any nature whatsoever, regarding [LUI] or the [LUI] Parties," which includes Mr. Walmsley.  [Section 1(g).]

91.     But since at least January of 2020, Varghese has been working with Davis and holding himself out to the public as the Vice President of Sales of RWA.

92.     Varghese also registered guests at the February 2020 Presentation and assisted Davis in signing up customers for a membership to RWA's real estate investing

-19-

program.

93.     As of February 25, 2020, Varghese was also representing on Facebook that he was a "part owner" of LUI.

94.     This statement violates Sections 1(d) and 2(c) of the 2015 Varghese Settlement Agreement.

95.     Around this same time, Varghese also wrote on Facebook, "Give Del a bottle of wine and see what happens."

96.     This disparaging statement violates Section 1(g) of the 2015 Varghese Settlement Agreement.

97.     On March 4, 2020, counsel for LUI sent counsel for Varghese a letter notifying Varghese of his breaches of the 2015 Varghese Settlement Agreement, as well as Davis's and RWA's infringement of LUI's copyrights and trademark rights.

98.     After receiving that letter, Varghese changed his cover photo on his Facebook page to a photo of LUI's team members in an attempt to improperly suggest his affiliation with LUI.

99.     Varghese has also been contacting LUI's team members in an attempt to obtain confidential and/or proprietary information about LUI from them.

100.    Upon information and belief, Varghese is encouraging Davis and RWA— and conspiring with them—to violate LUI's intellectual property rights and other rights, including LUI's copyrights in the Copyrighted Works.

101.    Upon information and belief, Varghese is also directly infringing LUI's copyrights with Davis and RWA.

-20-

4840-6655-4039

102.    LUI reserves the right to amend this Complaint if Defendants give additional presentations, speeches, or performances, or provide additional workshops and/or seminars, which violate LUI's rights, copy in whole or in part constituent elements of the Copyrighted Works, or any other work in which LUI has a valid and enforceable copyright, if Defendants take any additional action which violates the Lanham Act, or if Davis or Varghese take any additional action which violates their agreements with LUI.

## COUNT I

### (Copyright Infringement Under 17 U.S.C. § 501)

### (All Defendants)

103.    LUI hereby realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

104.    LUI has copyright registrations issued by  the United States Copyright Office regarding the Copyrighted Works: (1) 1990 training manual (Registration No. TXu 2-093-578); (2) Free Workshop Script (Registration No. TXu 2-093-031; the "Script" defined above); (3) 2014 Free Workshop Video (Registration No. PAu 3-907-835); (4) 2008 Free Workshop Video (Registration No. PAu 3-907-896); (5) Part 1 of teaching presenters free workshop (Registration No. PAu 3-907-838); (6) Part 2 of teaching presenters free workshop (Registration No. PAu 3-907-839); (7) Part 3 of teaching presenters free workshop (Registration No. PAu 3-907-840); and (8) 2015 2-Day Seminar Workbook (Registration No. TXu 2-093-082) (registration certificates attached as Exs. A–H).

105.   LUI owns valid copyrights in the works to which these copyright registrations relate.

106.   LUI paid the requisite filing fees and made complete material deposits for each of the Copyrighted Works prior to initiating this lawsuit.

107.   Defendants have, without the authorization or consent of LUI, copied in whole or in part constituent elements of the Copyrighted Works that are original (the "Infringing Work").  The Infringing Work includes, at least, Defendants' January and February 2020 Presentations and all corresponding handouts.

108.   Davis and Varghese, during their employment at LUI, had access to the Copyrighted Works.

109.   Davis's and Varghese's access to the Copyrighted Works was prior to their creation of the Infringing Work.

110.   In addition, the Infringing Work is substantially similar to the Copyrighted Works because the Infringing Work uses the same expression, concepts, and examples, among other things, as the Copyrighted Works.

111.   In addition, numerous other original elements of the Copyrighted Works are copied in the remaining sections of the Infringing Work.

112.   Defendants have infringed LUI's copyrights in one or more of the Copyrighted Works.

113.   This wrongful conduct constitutes a violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

114.   Defendants' conduct has irreparably damaged LUI and will continue to so damage LUI unless restrained by this Court.

115.   LUI is entitled to an injunction, actual damages (including Defendants' profits) or statutory damages, and an award of attorneys' fees and other costs as provided under 17 U.S.C. § 504 and § 505.

116.   Defendants' conduct was committed willfully, entitling LUI to an award of statutory damages of up to $150,000 for each copyrighted work infringed by Defendants.

## COUNT II

**(Contributory Copyright Infringement)**

**(Against Varghese Only)**

117.   LUI hereby realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

118.   If Varghese did not directly infringe the Copyrighted Works, then he is liable for contributory infringement.

119.   Davis and RWA directly infringed LUI's valid copyrights in the Copyrighted Works at least during the January and February 2020 Presentations.

120.   Varghese knew or had reason to know of the infringing activity of Davis and RWA because Varghese was familiar with the Copyrighted Works from his employment with LUI.

121.   Varghese intentionally induced and/or materially contributed to the infringing activity of Davis and RWA by, at least, facilitating the February 2020 Presentation.

122.    Varghese also took affirmative steps to encourage the infringing activity of Davis and RWA by, among other things, encouraging Davis and RWA to perform and/or display the Copyrighted Works, or derivative works thereof, and by facilitating that performance and/or display.

123.    Varghese contributorily infringed LUI's copyrights in the Copyrighted Material.

124.    LUI is entitled to an injunction, actual damages (including Varghese's profits) or statutory damages, and an award of attorneys' fees and other costs as provided under 17 U.S.C. § 504 and § 505.

125.    Varghese's conduct was committed willfully, entitling LUI to an award of statutory damages of up to $150,000 for each copyrighted work infringed by Defendants.

## <u>COUNT III</u>

**(Trademark Infringement, False Designation of Origin, and False or Misleading Representation of Fact Under 15 U.S.C. § 1125 & Texas Common Law)**

**(All Defendants)**

126.    LUI hereby realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

127.    Defendants' actions, including falsely stating and misrepresenting their involvement with LUI, falsely stating that Defendants' materials have been successful, and claiming LUI's efforts, materials, and work as their own, are likely to cause confusion and mistake, or to deceive as to the affiliation, connection, or association of LUI with Defendants, and/or as to the origin, sponsorship, or approval of Defendants'

goods, services or commercial activities, in violation of 15 U.S.C. § 1125(a).

128.   Upon information and belief, Defendants' actions were taken with the intent to trade upon LUI's reputation and goodwill by causing confusion and mistake among consumers and the public and to deceive the public into believing that Defendants' goods and services are associated with, sponsored by or approved by LUI, when they are not.

129.   Upon information and belief, the activities of Defendants complained of herein constitute willful and intentional infringement, false designation of origin, false or misleading description of fact, or false or misleading representation of fact,  pursuant to 15 U.S.C. § 1125(a).

130.   Defendants, by their actions, have damaged LUI in an amount to be determined at trial.

131.   Defendants have irreparably injured LUI by their actions. Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of LUI's rights, for which LUI has no adequate remedy at law.

132.   LUI is entitled to an injunction, actual damages, and an award of attorneys' fees and other costs as provided under 15 U.S.C. § 1117(a).

## COUNT IV

**(Breach of Contract Under Texas Common Law – 2016 Settlement Agreement)**

**(Defendant Davis Only)**

133.    LUI hereby realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

134.    LUI is a party to and executed the 2016 Settlement Agreement.

135.    Davis is a party to and executed the 2016 Settlement Agreement.

136.    The 2016 Settlement Agreement has an effective date of May 10, 2016.

137.    The 2016 Settlement Agreement is a valid and enforceable contact.

138.    LUI fulfilled all its obligations under the 2016 Settlement Agreement.

139.    All conditions required by the 2016 Settlement Agreement for Davis's performance have occurred.

140.    Davis materially breached the 2016 Settlement Agreement by, among other things, claiming ownership in LUI and disclosing the existence of the 2016 Settlement Agreement.

141.    As a direct and proximate result of Davis's material breaches of the 2016 Settlement Agreement, LUI has suffered and will continue to suffer damages in an amount to be determined at trial.

142.    LUI is entitled to recover its attorneys' fees and costs pursuant Texas law. *See* Tex. Civ. Prac. & Rem. Code § 38.001.

## COUNT V

**(Breach of Contract Under Texas Common Law – 2016 Confidentiality Agreement)**

**(Defendant Davis Only)**

143.    LUI hereby realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

144.    LUI is a party to and executed the 2016 Confidentiality Agreement.

145.    Davis is a party to and executed the 2016 Confidentiality Agreement.

146.    The 2016 Confidentiality Agreement has an effective date of May 10, 2016.

147.    The 2016 Confidentiality Agreement is a valid and enforceable contact.

148.    LUI fulfilled all its obligations under the 2016 Confidentiality Agreement.

149.    All conditions required by the 2016 Confidentiality Agreement for Davis's performance have occurred.

150.    Davis materially breached the 2016 Confidentiality Agreement by, among other things, disclosing and using Confidential Matters, which include LUI's business models, teaching techniques, sales and other strategies, trade secrets, or knowledge or information of value to LUI, without LUI's prior approval.

151.    As a direct and proximate result of Davis's material breaches of the 2016 Confidentiality Agreement, LUI has suffered and will continue to suffer damages in an amount to be determined at trial.

152.    LUI is entitled to recover its attorneys' fees and costs pursuant Texas law. *See* Tex. Civ. Prac. & Rem. Code § 38.001.

## COUNT VI

**(Breach of Contract Under Texas Common Law – 2019 Settlement Agreement)**

**(Defendant Davis Only)**

153.    LUI hereby realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

154.    LUI is a party to and executed the 2019 Settlement Agreement.

155.    Davis is a party to and executed the 2019 Settlement Agreement.

156.    The 2019 Settlement Agreement has an effective date of July 25, 2019.

157.    The 2019 Settlement Agreement is a valid and enforceable contact.

158.    LUI fulfilled all its obligations under the 2019 Settlement Agreement, including the Informal Dispute Resolution provisions in Section 14 of that Agreement.

159.    All conditions required by the 2019 Settlement Agreement for Davis's performance have occurred.

160.    Defendant materially breached the 2019 Settlement Agreement by, among other things, infringing LUI's Copyrighted Works, stating or implying that Davis was a Mentor for LUI, stating or implying that Davis has mentored all or a substantial part of LUI's members, disparaging Mr. Walmsly, suggesting that Defendants are affiliated with LUI, and suggesting that Defendants' services are derived or adapted from LUI's services.

161.    As a direct and proximate result of Davis's material breaches of the 2019 Settlement Agreement, LUI has suffered and will continue to suffer damages in an amount to be determined at trial.

162.    LUI is entitled to recover its attorneys' fees and costs pursuant Texas law. *See* Tex. Civ. Prac. & Rem. Code § 38.001.

## COUNT VII

### (Breach of Contract Under Texas Common Law – 2015 Varghese Settlement Agreement)

### (Defendant Varghese Only)

163.    LUI hereby realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

164.    LUI is a party to and executed the 2015 Varghese Settlement Agreement.

165.    Varghese is a party to and executed the 2015 Varghese Settlement Agreement.

166.    The 2015 Varghese Settlement Agreement has an effective date of December 23, 2015.

167.    The 2015 Varghese Settlement Agreement is a valid and enforceable contact.

168.    LUI fulfilled all its obligations under the 2015 Varghese Settlement Agreement.

169.    All conditions required by the 2015 Varghese Settlement Agreement for Varghese's performance have occurred.

170.    Varghese materially breached the 2015 Varghese Settlement Agreement by, among other things, stating that he was a co-owner of LUI and disparaging Mr. Walmsley.

171.    As a direct and proximate result of Varghese's material breaches of the 2015 Varghese Settlement Agreement, LUI has suffered and will continue to suffer damages in an amount to be determined at trial.

172.    LUI is entitled to recover its attorneys' fees and costs pursuant Texas law. *See* Tex. Civ. Prac. & Rem. Code § 38.001.

## **PRAYER FOR RELIEF**

WHEREFORE, LUI prays for the following relief:

A.    For judgment in favor of LUI and against Defendants on all claims set forth above;

B.    That Defendants, their agents, servants, employees, attorneys, successors, franchisees, licensees and assigns, and all other persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise, be forthwith preliminarily and permanently enjoined from:

i.        falsely designating the origin of Defendants' goods or services;

ii.       falsely suggesting that LUI sponsors, endorses, or approves of Defendants' goods or services, or falsely suggesting that LUI is affiliated with Defendants;

iii.      falsely suggesting that Defendants' goods or services have enjoyed the success that LUI's goods and services have enjoyed;

iv.      unfairly competing with LUI in any manner whatsoever;

v.       causing a likelihood of confusion or injury to LUI's business reputation;

4840-6655-4039

vi.      using LUI's Work Product, which Defendant Davis is contractually prohibited from using, and which the United States Copyright Laws prohibit him from using;

vii.     using LUI's materials that are protected by copyright, including those materials alleged herein;

viii.    using any information specified in the 2016 and 2019 Agreements, which Davis is contractually prohibited from using;

C.     That Defendants be directed to file with this Court and serve on LUI within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which they have complied with the injunction pursuant to 15 U.S.C. § 1116;

D.     That Defendants be required to account to LUI for any and all profits derived by Defendants and all damages sustained by LUI by virtue of Defendants' acts complained of herein;

E.     That Defendants be ordered to pay to LUI all damages which LUI has sustained as a consequence of the acts complained of herein, subject to proof at trial, together with prejudgment and post-judgment interest;

F.     That Defendants be ordered to pay LUI statutory damages of up to $150,000 per work infringed, as set forth in 17 U.S.C. § 504;

G.     That this case be deemed exceptional and the amount of the damages be trebled and that the amount of profits be increased by as many times as the Court deems appropriate, pursuant to 15 U.S.C. § 1117;

H.      That LUI be awarded exemplary damages from Defendants;

I.      That Defendants' actions be deemed willful;

J.      That an award of reasonable costs, expenses, and attorneys' fees be

awarded to LUI pursuant to 17 U.S.C. § 505, 15 U.S.C. § 1117, and Tex. Civ. Prac. &

Rem. Code § 38.001, and to the extent recoverable by any other applicable contract or

statute;

K.      That LUI be awarded restitution and disgorgement; and

L.      That LUI be awarded such other and further relief as this Court may deem

just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, LUI hereby demands

a jury trial on all issues in this litigation that are triable to a jury.

DATED this 17th day of April, 2020.


Respectfully submitted,

SNELL & WILMER, LLP
400 E. Van Buren, Suite 1900
Phoenix, AZ 85004
602.382.6000
602.382.6070 (FAX)
wcrowson@swlaw.com


By:_____
        WALKER F. CROWSON
        State Bar No. 24012480
        S.D. Texas No. 26595
        ATTORNEY IN CHARGE FOR PLAINTIFF

4840-6655-4039